UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

v.

DENNIS WILLIAMS,

*Defendant.*

Case No. 20-cr-20382

Honorable Paul D. Borman

**SENTENCING MEMORANDUM OF DENNIS WILLIAMS**

On August 27, 2020, Dennis Williams was charged in a single count Information with conspiracy to embezzle union funds, in violation of 18 U.S.C. § 371 and 29 U.S.C. § 501(c). On September 30, 2020, Dennis Williams pled guilty to the Information pursuant to a written plea agreement governed by Federal Rule of Criminal Procedure 11(c)(1)(C). The parties agreed regarding the scope of Mr. Williams' conduct, the sentencing guidelines calculations, and the advisory sentencing guidelines range. This memo addresses the factors that this Court must consider under 18 U.S.C. § 3553. Based on the information set forth below, Mr. Williams respectfully requests that this Court impose a term of incarceration of one year and one day.

I.   **INTRODUCTION**

Dennis Williams is more than the offense to which he pled guilty. He is a loving husband to his wife of 46 years. He is the devoted father of two sons and grandfather of two grandchildren. He is a loyal friend to many. He is a Marine who served his country honorably. He is a veteran of the labor movement, having started as a salvage welder in 1977 and risen through the ranks of local, regional, and ultimately international leadership of the United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"). He is a leader who has served on multiple corporate boards who has declined substantial compensation for his service and instead directed

more than one million dollars to union members' retirement funds. Mr. Williams' mistakes, while serious, represent an aberration from a life otherwise full of service to his family, his community, his country, and the labor movement.

Friends talk about his "generosity and selfless commitment to his neighbors and community," calling him "one of the kindest and most helpful people we've ever known." A neighbor explained that without Mr. Williams, she is "not sure if my husband would be alive." Former labor activists call Mr. Williams "a true believer" who "worked tirelessly to ensure fairness, equality, and a safe working environment for our union members." UAW members recall Mr. Williams "always had a heart for helping others" and credit him with "sav[ing] the UAW from financial crisis."

The Chief Executive Officer of Navistar, where Mr. Williams represented workers on the board, describes him as "extremely professional" and notes that he "decided not to receive board compensation he was due" but instead "contributed over $1.1 million, the total of his accumulated board retainer, to the NITC Supplemental Benefit Trust program, for the benefit of Navistar retirees." Mr. Williams' family writes about the "honest, kind, hard-working, loyal" husband, father, Little League coach, activist and mentor who "drove hours in the middle of the night to make it to early morning baseball games" and taught his sons principles such as "deep beliefs of respect for others" and "civic duty and ideals of equality."[1]

Back in 1977, long before Mr. Williams became a union leader, he was a young father and a recently-discharged Marine sergeant, searching for a way to put food on the table for his family. He found a job as a union welder at the J. I. Case plant in Rock Island, Illinois. He also found

---

[1] These statements are excerpted from character reference letters submitted on behalf of Mr. Williams, which are included as exhibits to this Memorandum. *See* Exs. 1-13. These letters were previously provided to the Court and the Government on April 8, 2021.

something more: a passion for helping working people and a lifelong calling in the labor movement. In the following decades, Mr. Williams rose through the ranks from the factory floor, to the President of the UAW. Mr. Williams devoted himself to the union, successfully righting the UAW's financial ship (despite his lack of formal education or training) and growing the UAW's national membership by more than 60,000 during his tenure.

Mr. Williams has taken all possible steps to right his wrongs. Prior to being charged in this case, Mr. Williams paid $56,114 in restitution to the UAW. Mr. Williams has since repaid the remaining $76,403 restitution to the UAW and has paid all back taxes owed to the IRS.[2] When pleading guilty, Mr. Williams spoke at length regarding his deep regret for his misconduct, apologizing to the UAW, his family, friends, and this Court. As Mr. Williams said, "There's not a day gone by that I don't think about it. It's something that will be with me for the rest of my life." Presentence Report, *United States v. Williams*, Case No. 2:20-cr-20382 (E.D. Mich. Feb. 2, 2021), Dkt. 15 ("PSR"), ¶ 28. Mr. Williams has withdrawn his membership from the UAW, thereby severing his connection to the organization to which he devoted his entire professional life. His reputation and relationships with former colleagues, built over many years, have been all but destroyed. And his character has been further attacked through sensational and unfounded media leaks regarding allegations of misconduct with which he has not been charged.[3]

---

[2] The UAW received and cashed Mr. Williams' check on April 8, 2021. The Government confirmed its receipt of Mr. Williams' check on April 8, 2021, and on April 9, 2021 confirmed that Mr. Williams had fulfilled his obligations under the plea agreement with respect to payments to the IRS.

[3] For example, unnamed sources "familiar with the investigation" suggested through salacious media leaks that Mr. Williams obstructed the Government's investigation and directed other schemes, *none* of which have been borne out. *See, e.g.*, Robert Snell, Feds aimed guns, handcuffed ex-UAW boss Dennis Williams during raids, The Detroit News (September 17, 2019) (citing three unnamed sources who say that Mr. Williams "may have been tipped off" about the raid on his home where he was "held at gunpoint"), *available at* https://www.detroitnews.com/story/business/autos/2019/09/17/retired-uaw-head-dennis-

Mr. Williams understands that he will be sentenced to a term of imprisonment for his misconduct. Based on the factors set forth in Section 3553(a), and the information described herein, we respectfully request that the Court impose a sentence below the guidelines range.

## II.     18 U.S.C. § 3553

Section 3553 instructs a district court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in paragraph (2) of this subsection." 18 U.S.C. §3553(a). The statute then lists seven factors a court "shall consider." *Id*. The district court may select a variance based on these factors. *See United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009) ("In contrast to a departure, a 'variance' refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a)."). Mr. Williams addresses the relevant factors below.

### A.     The History And Characteristics Of The Defendant

Section 3553(a) instructs the court to consider the "history and characteristics of the defendant." *Id.* §3553(a)(1). Mr. Williams' life – until his conviction – was a great American success story. He was born and raised in a working-class Midwest family, served his country honorably in the U.S. Marine Corps, and made an honest living as a union welder. He rose through the ranks at the UAW through his passion and skilled advocacy for other working families. He steered the UAW from a period of budget deficits and declining membership to budget surpluses

---

williams-held-gunpoint-during-federal-raids/2309500001/; *see also* Robert Snell, Ex-UAW boss Dennis Williams OK'd using training center funds, aide says, The Detroit News (July 26, 2018) (citing "sources familiar with the investigation" who told the press that the unidentified union official who directed the use of training center funds was Dennis Williams), *available at* https://www.detroitnews.com/story/business/autos/2018/07/26/uaw-president-dennis-williams-conspiracy-directed-use-automaker-funds-through-training-centers/822741002/. The Government has never charged Mr. Williams with obstruction or with any role in the misuse of training center funds.

and seven years of membership growth. He has been married for 46 years to his wife Donna, who retired in 2016 as a civilian employee of Naval Station Great Lakes in Illinois. Together, they raised two sons, Ryan and Matthew. He is a proud and devoted grandparent to Kai and Kendahl Williams, although he has been unable to visit with them since Christmas 2019 due to the COVID-19 pandemic. As the Probation Office notes, "By all estimations, [Mr. Williams] has lived a productive and successful life." PSR ¶ 95.

### 1. Mr. Williams' Childhood And Education

Dennis Williams was born in Moline, Illinois, on May 12, 1953. The Williams family was working-class to their bones. His father was a coal miner and foundry molder who died around 1979 from black lung disease. Mr. Williams had five siblings, three of whom are now deceased. One brother, Roger, died in 1997 from mesothelioma after being exposed to asbestos as a pipeline worker. From 13 years old until 15, Mr. Williams lived with his sister. At 15, he moved in with Jack and Shirley Thomas (since deceased), who became his legal guardians, as his parents "may have gotten tired of raising children." *See* PSR ¶ 49. He attended high school at Rock Island High School in Rock Island, Illinois. But before he could earn a diploma, Mr. Williams left school and enlisted in the United States Marine Corps.

### 2. Military Service And Marriage

In November 1971, at the age of 18, Mr. Williams voluntarily enlisted in the Marine Corps. The Vietnam War was ongoing, with 191,000 American troops deployed to Southeast Asia.[4] When Mr. Williams finished basic training and infantry school, he received orders to the First

---

[4] *See* Vietnam War Campaigns: Consolidation I, U.S. Army Center of Military History, *available at* https://history.army.mil/html/reference/army_flag/vn.html#consolidationihistory.army.mil/html/reference/army_flag/vn.html#consolidationi.

Tank Battalion in Camp Pendleton, California, followed by the Third Tank Battalion in Okinawa, Japan. He also deployed for about 6 months with the Fleet Marine Force, a combined expeditionary force of U.S. Navy and Marine Corps units, sailing throughout the South China Sea as peace talks continued to end the Vietnam War. During this time, Mr. Williams rose through the ranks to E-5, or Sergeant.

In August 1974, Mr. Williams was sent back to Camp Pendleton where he worked in the base legal department. One day, in the Camp Pendleton chow hall, Mr. Williams met a female Marine named Donna Szczecina, and they fell in love. Dennis and Donna were married on April 26, 1975 in Oceanside, California. They just celebrated their 46th wedding anniversary. In 1975, Mr. and Mrs. Williams were honorably discharged from the Marine Corps. After leaving the service, Mr. Williams attended Grossmont College in El Cajon, California for one year. But then Donna became pregnant with their first son, Ryan, so Mr. Williams decided to put family first. The family moved back to Mr. Williams' hometown of Rock Island, Illinois, so he could find a job to support their growing family.

### 3. History With The UAW

Upon returning home, Mr. Williams found a job building at the J. I. Case plant in Rock Island, where he became a dues-paying UAW member. Thanks to his military experience, he was able to take his skills and become salvage welder. In 1981, members from the UAW local asked Mr. Williams to run for committeeman. Three years later, he became chairman of the UAW local, acting as chief negotiator and handling grievances for the entire plant. Noticing his talent, J. I. Case even offered Mr. Williams a job working for them in their pension department. But it was too late – he had already fallen in love with the labor movement. Mr. Williams loved the philosophy that said that workers had a voice. He just could not consider taking a job with management.

In 1986, J. I. Case announced the closure of the Rock Island plant. The Williams family planned to move back to California, but in 1988 the International UAW asked Mr. Williams to work for the union as an organizer. He spent 15 years organizing non-union plants throughout the Midwest, helping to negotiate new labor contracts and conducting arbitrations on behalf of workers. Around 2001, Mr. Williams became the Director of UAW Region 4, encompassing Illinois, Iowa, Nebraska, Wisconsin, Minnesota, North Dakota, South Dakota, Wyoming, Montana, Kansas, Missouri, Oregon, Washington, Idaho, Nevada, Alaska and Hawaii. In 2010, he became the Secretary Treasurer of the UAW, and in 2014 he was elected President.

At that time, the UAW was in dire financial straits. By 2011, UAW membership had fallen to 370,000 and the union was running a $30 million annual deficit, requiring it to use money from the strike fund just to pay operating costs.[5] By 2014, UAW membership had declined 31% in just 9 years.[6] Despite his lack of formal management education or training, Mr. Williams instituted a successful plan to cut costs and grow membership, including through novel concepts like expanding the UAW membership to higher education workers at places such as Harvard University and the University of Washington. UAW finances and membership rebounded, as *The Detroit News* observed at the end of Mr. Williams' term as President:

> [U]nder the tenure of . . . Dennis Williams, the union grew its membership to more than 430,000, claimed near-record profit-sharing payouts for members, added to its strike and defense fund, and balanced its budget after tough blows delivered when two of three Detroit automakers collapsed into bankruptcy in 2009.[7]

---

[5] The UAW is Strong, Stable and Growing, Solidarity Magazine (May-June 2018), *available at* https://uaw.org/wp-content/uploads/2018/11/Solid-MayJun-2018-PRINT-FILE.pdf.

[6] Jonathon Ramsey, Dennis Williams elected UAW president, Autoblog.com (June 5, 2014), *available at* https://www.autoblog.com/2014/06/05/dennis-williams-elected-uaw-president/.

[7] Nora Naughton, New UAW President takes over at uncertain time, The Detroit News (June 14, 2018), *available at* https://www.detroitnews.com/story/business/autos/2018/06/14/gary-jones-uaw-convention-speech-united-auto-workers/700037002/.

Mr. Williams' last year as President was the third straight year with a fiscal surplus, and the seventh consecutive year of membership growth.[8] As Dave Curson, retired UAW member and former Congressman, writes in his character reference letter, the UAW was in "a deadly economic spiral" and "[w]ithout question, Dennis' work saved the UAW from financial crisis . . . ." Ex. 6, Letter of Rep. David A. Curson.

Several other labor leaders, from towns across the country, have submitted letters on Mr. Williams' behalf, describing his dedication to working men and women. David Chapman, the former President of UAW Local 974 in East Peoria, Illinois, writes that Mr. Williams "worked tirelessly to ensure fairness, equality, and a safe working environment." Ex. 4, Letter of David W. Chapman. Rosemarie Salinas, the former President of UAW Local 2166 in Shreveport, Louisiana, writes that Mr. Williams "was a true believer in our members and our members loved him." Ex. 10, Letter of Rosemarie Salinas. She also notes that although the UAW had been a "good ole boys" organization, the UAW "[u]nder Dennis's leadership, as president, gave more women opportunities to advance their careers." *Id.*

In perhaps the most concrete example of Mr. Williams' true priorities, he chose to forego substantial personal compensation associated with sitting on corporate boards. As former Congressman Dave Curson explains in his letter, UAW leaders do sit on corporate boards from time to time to represent labor interests, but they are prohibited from accepting compensation for such work while still employed by the UAW. *See* Ex. 6, Letter of Rep. David A. Curson. Many choose instead to defer the compensation until after their retirement, which is permissible. *Id.* But not Mr. Williams. As former Congressman Curson and Navistar Executive Chairman Troy Clarke

---

[8] United Auto Workers union seeks to restore its image, Detroit Free Press (Dec. 1, 2017), *available at* https://www.thegazette.com/subject/news/business/united-auto-workers-union-seeks-to-restore-its-image-20171201.

both attest, Mr. Williams chose to contribute more than $1.1 million in Navistar board compensation to the UAW retirement fund for Navistar workers, rather than keep the money for himself, as many others lawfully did. *See* Exs. 5 and 6, Letters of Troy A. Clarke and Rep. David A. Curson. This is not the only example: Mr. Williams did the very same thing when he sat on the board of the UAW Retiree Medical Benefits Trust, again donating the board compensation to the retiree pension fund.

In its sentencing memorandum the Government takes a far more narrow, and negative view of Mr. Williams' tenure with the UAW. *See* Dkt. 22 at 9-11. We address Mr. Williams' charged conduct below. *See infra*, Section II.B. Notably, Mr. Williams has not been charged with, nor has he pled guilty to, the other conduct of which the Government now accuses him with minimal opportunity to respond. *See* Dkt. 22 at 9-11. The Government's allegations with respect to the National Training Centers are based solely on the uncorroborated accounts of Gary Jones, Vance Pearson, and another former union official. Each of these individuals has admitted to engaging in widespread illegal conduct and has provided information about Mr. Williams in an effort to receive a reduced sentence. The Government also takes issue with the UAW's decision to follow a longstanding tradition and provide Mr. Williams, in his role as a former president of the UAW, with a cabin at the union's conference center in Black Lake, Michigan. Mr. Williams long ago relinquished his access to the cabin, which the UAW sold for fair market value in June 2020.[9] To the extent that this Court considers this purported misconduct, we would ask that it give the

---

[9] Robert Snell, UAW accepts offer on controversial Black Lake home built for Dennis Williams, The Detroit News (June 10, 2020), *available at* https://www.detroitnews.com/story/business/autos/2020/06/10/uaw-accepts-offer-black-lake-home-built-dennis-williams-under-investigation/111944668/.

uncorroborated accusations their proper weight and place them in the context of Mr. Williams' more than thirty years of service to the UAW.[10]

### 4. Social and Charitable Activities

Mr. Williams has been constantly involved in charity and his local community. As UAW President, he started the Williams Charity Fund (which was dissolved upon his retirement in 2018) to help Michigan children in foster care, as well as other people in need. In 2017, the Williams Charity Fund donated more than $10,000 to The Judson Center / Child Safe Michigan. Mr. Williams also raised tens of thousands of dollars for the Salvation Army and the YMCA through the Williams Charity Fund. Charitable activism has been a constant in Mr. Williams' life. As David Chapman, former President of UAW Local 974 in East Peoria, Illinois, writes: "[Mr. Williams] initiated golf outings in Peoria & Ottawa Illinois as well as in Janesville Wisconsin as a resource to help people in need. The funds raised through the golf outings were sent directly to local food banks and shelters. Denny has always had a heart for helping others." Ex. 4, Letter of David W. Chapman.

As a retiree, Mr. Williams is a model neighbor and community member in Corona, California. Even though Dennis and Donna have only lived in Corona since 2018, he's already made a deep impression in this community. His neighbor Sandra McKay-Sanchez writes of three instances in February 2020, when her husband had three separate strokes. *See* Ex. 8, Letter of Sandra McKay-Sanchez Letter. Each time, she yelled for Dennis, and he came running to help.

---

[10] Tellingly, the Government is not seeking to include these accusations in Mr. Williams' loss amount or offense level calculations, which would have required that the allegations be relevant and proven by a preponderance of the evidence. *See, e.g., United States v. Worex*, 420 F. App'x 546 (6th Cir. 2011) (holding that district court, in sentencing the defendant to an upward variance, erred in failing to find by a preponderance of the evidence that the defendant had been involved in uncharged criminal activity).

In fact, Ms. McKay-Sanchez believes that Mr. Williams saved her husband's life with his quick response. *Id.* Other residents note that Mr. Williams is "constantly making inquiry to determine the status of elderly and infirm residents in the community." Ex. 1, Letter of Terrence Boess. Neighbors describe him as "one of the kindest and most helpful people we've ever known" and attest that there is "no one I know that puts more into being a good citizen than Dennis." *See, e.g.,* Exs. 2 and 3, Letters of William Boutboul and Jim Bradley.

Mr. Williams believes in service to others, and he has walked the walk. As a young man, he served his country in the Marine Corps. As a father, he instilled the values of duty and community in his sons. His son Ryan, for instance, writes:

> As my Little League coach my father would provide rides for kids whose parents did not have the time or inclination to do so for them. He mentored kids who came from troubled homes, gave them a shoulder to lean on and an ear to listen to their problems when often no one else would. He relentlessly fund raised to make our home park a source of pride and for our league to continue providing services to our community.

*See* Ex. 13, Letter of Ryan Williams. Ryan continues:

> My father taught me civic duty and the ideals of equality amongst man. I was often ridiculed for not wearing certain clothing, shoe brands, or not shopping at certain stores because of unfair labor practices. I didn't get gas at certain stations because of the companies who supplied their oil supported apartheid in South Africa. I am to this day able to live a principled and examined life because of those lessons and see them as the greatest gifts I ever received from anyone.

*Id*. Wherever Mr. Williams has gone, he has thrown himself into the betterment of the community and the people around him. Such a heart for service is grounds alone for a downward variance.

### 5. Mr. Williams' Age And Health

The Sixth Circuit has held that a defendant's age may be considered under § 3553(a). The *See United States v Payton*, 754 F.3d 375, 379 (6th Cir. 2014) ("Both the Guidelines and our Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing."). Mr. Williams will turn 68 the day after his sentencing, with several

11

heart and blood pressure issues. In 2012, Mr. Williams suffered a myocardial infarction, or heart attack. *See* PSR ¶ 55. His other diagnoses include dyslipidemia (abnormal cholesterol) and essential hypertension. *Id.* His medications include aspirin, clopidogrel (anti-platelet medication), lisinopril (for high blood pressure), metoprolol (a beta-blocker), nitroglycerin, omega-3 fatty acids, sildenafil, and simvastatin (for cholesterol).

As the letters from his wife and sons illustrate, Mr. Williams is a devoted family man. Due to the COVID-19 pandemic, he has been cut off from his grandchildren for more than a year. As the nation emerges from the pandemic, Mr. Williams is now facing a term of imprisonment. Considering his age, health and extremely low likelihood of re-offending, a downward variance is justified in this case. *See*, *e.g.*, *United States v. Davis*, 537 F.3d 611, 616 (6th Cir. 2008) ("[A]ge, the second reason for the district court's variance, may indeed by a legitimate basis for a variance. The defendant was 56 when he committed the first crime, and he was 70 at the time of the second sentencing hearing.").

**B.     The Nature Of The Offense**

Section 3553(a) also instructs the court to consider the "nature and circumstances of the offense." *Id.* §3553(a)(1). The nature and circumstances of this offense are limited to Mr. Williams' embezzlement of UAW funds on items he received around the time of UAW Region 5 conferences. More specifically, between 2013 and 2018, Mr. Williams received housing for himself and others in Palm Springs, California, golf clothing and other related merchandise, rounds of golf, and certain meals, liquor, and cigars. Jones and other officers of the UAW provided these items to Mr. Williams, typically before, during, or after conferences put on by UAW Region 5.

Mr. Williams was aware that the expenditure of UAW funds for certain entertainment expenses related directly to UAW Region 5 conferences could constitute the legitimate and lawful expenditure of union funds. Nonetheless, he had suspicions about how the UAW Region 5 paid

12

for the items he and others were receiving. While in Palm Springs, Mr. Williams asked then-Region 5 Director Jones how he was able to pay for the UAW Region 5 conference expenses. Jones assured him that everything was "above board." Mr. Williams did not look into the issue further, and did not otherwise determine the source of the funds.

Jones and other co-conspirators hid these and other, far greater, expenses, in "master bills" that were then submitted to UAW headquarters for reimbursement. The Government acknowledges that Edward Robinson "had resort employees create false information for the vouchers" and that Gary Jones and Vance Pearson "signed and submitted the fraudulent vouchers to the UAW account department. Williams didn't." Dkt. 22 at 13. The Government makes clear that Mr. Williams "did not create or submit the fraudulent vouchers or specifically approve these individual bills" tied to the improper expenses. *Id.*; *see also* PSR (noting there is "no information to indicate [Mr. Williams] was the one writing the check or directed anyone to do so."). While Mr. Williams "approved the yearly LM-2 reports," those reports did not include itemized conference expenses. As such, neither Mr. Williams nor any of the other UAW personnel responsible for reviewing and approving the reports could have identified the expenses. This was by design – a design set forth by Jones.

Unbeknownst to Mr. Williams, the master billing scheme was only one of a number of schemes Jones concocted to embezzle money from the UAW. *See* Rule 11 Plea Agreement, *United States v. Jones*, Case No. 19-cr-20726 (E.D. Mich. June 3, 2020), Dkt. 42. In fact, when federal agents searched Jones' home, they founds wads of cash totaling more than $32,000.[11] In contrast,

---

[11] *See* Former UAW President Gary Jones Pleads Guilty to Embezzlement, Racketeering, and Tax Evasion, Dept. of Justice Press Release (June 3, 2020), *available at* https://www.justice.gov/usao-edmi/pr/former-uaw-president-gary-jones-pleads-guilty-embezzlement-racketeering-and-tax-evasion.

13

after searching Mr. Williams' home in California and a UAW cabin he formerly occupied in Michigan, the only items the Government seeks to forfeit are a bag of golf clubs and assorted golf merchandise.[12]

### C. Restitution And Cooperation

Section 3553(a) also instructs the court to consider "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Back in June 2020, long before this sentencing process, Mr. Williams proactively paid the UAW $56,114 for condo rentals between 2013 and 2018. After pleading guilty Mr. Williams cooperated with the Government to calculate the remaining restitution, resulting in his payment of $76,403 to the UAW for rental properties, golf, meals, alcohol and cigars. Mr. Williams has also fully cooperated with the Government in paying $15,459.36 in taxes related to these expenses. As the PSR notes, "[Mr. Williams'] willingness to resolve some, most, or all of his financial obligations/restitution with the UAW, plus cooperating with the Internal Revenue Service (IRS) to identify his correct tax liability for 2017 and 2018, illustrates his understanding of the seriousness of the offense." ¶ 97. If sentenced to a term of imprisonment, Mr. Williams says he will continue to repay his debt, by "try[ing] to help other men to build skills and find good paying work to support their families when they finish their time." PSR ¶ 53.

### D. The Need To Avoid Unwarranted Sentencing Disparities

In determining a sentence, 18 U.S.C. § 3553(a)(6) instructs that the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." At the same time, the Court should treat different

---

[12] The Government has voluntarily returned other items seized during the search of Mr. Williams' home and the UAW cabin he formerly occupied.

cases differently. *See Gall v. United States*, 552 U.S. 38, 55 (2007) (noting that the district court "considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated."). Mr. Williams should not receive a sentence that is unjustifiably disparate from sentences imposed in the other recent cases resulting from the U.S. Attorney's Office investigation into the UAW.

Mr. Williams' conduct is readily distinguishable from the ringleaders of the "master billing" scheme, such as Jones and Pearson, who have not yet been sentenced but face guideline ranges of 46-57 months and 24-30 months, respectively. These guideline ranges appropriately reflect the leadership roles Jones and Pearson played in designing and carrying out the master billing scheme. In contrast, Mr. Williams participated in the scheme by personally receiving benefits improperly purchased with UAW funds. By agreement of the parties, Mr. Williams is responsible for only those improper benefits he personally received – benefits for which he has repaid the UAW and the IRS.

The cases of Norwood Jewell (15 months imprisonment) and Monica Morgan (18 months imprisonment) bear many similarities to that of Mr. Williams. Like Mr. Williams, Jewell did not receive a downward departure for cooperation in the investigation. *See* Rule 11 Plea Agreement, *United States v. Jewell*, Case No. 19-cr-20146 (E.D. Mich. Apr. 2, 2019), Dkt. 10. But unlike Mr. Williams, who was a recipient of benefits related to Region Five conferences, Jewell actively planned and directed extravagant parties and dinners, in violation of the Labor Management Relations Act, 29 U.S.C. § 186. *Id.* Jewell's parties included wine bottles with customized logos bearing his name and women hired to light cigars, all paid for illegally by Jewell's design. *Id.*

The most analogous case to Dennis Williams is likely that of Monica Morgan, the wife of deceased UAW Vice President General Holiefield,. Morgan pled guilty in this Court on July 13,

2018, to a single count of tax fraud for failing to report $201,231 in income. *See* Plea Agreement, *United States v. Morgan*, Case No. 17-cr-20406 (E.D. Mich. Feb. 6, 2018), Dkt. 63. She received this unreported money from a charity run by her husband and from the UAW-Chrysler National Training Center. *See* First Superseding Indictment, *United States v. Morgan*, Case No. 17-cr-20406 (E.D. Mich. July 26, 2017), Dkt. 4. Morgan faced a guideline range of 24-30 months (higher than Mr. Williams). Morgan did not receive any downward departure for cooperation. However, considering Morgan's involvement in the community and assistance to people in need, the Court granted a downward variance to 18 months. *See* Sentencing Tr., *United States v. Morgan*, Case No. 17-20406 (E.D. Mich. Aug. 3, 2018), at 24:2-4, Dkt. 119. Considering the depth and sincerity of Mr. Williams' community involvement and contributions to the UAW, as discussed above, a similar downward variance of 6 months is entirely appropriate in this case.

### III. THE APPROPRIATE SENTENCE

In light of the § 3553(a) factors, we respectfully submit that a sentence of one year and one day would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). Mr. Williams will be sixty-eight years old at sentencing. He has no prior criminal history. He has lost his career, his reputation, and will soon lose his freedom. He has been punished much longer than the time he will serve in prison. Since 2018 he has been attached by the press and lived under the cloud of investigation and threat of imprisonment. His life has already been forever changed. As the PSR notes, Mr. Williams' conviction "will certainly tarnish his legacy and stain his 30 years of service to the UAW. The Court may wish to consider the collateral damage to the defendant's relationships and career reputation, including lack of any criminal history, as his understanding of punishment for the offense." *See* PSR ¶ 97; *see also United States v. Anderson*, 533 F.3d 623 (8th Cir. 2008) (affirming a downward variance based on "other ways in which the defendant had suffered atypical punishment such as the loss of his

reputation and his company . . . and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system"); *United States v. McElheney*, 630 F. Supp. 2d 886, 900 (E.D. Tenn. 2009) (granting downward variance considering, among other things, the "loss of [defendant's] family, reputation, and profession").

A below guidelines sentence would more than adequately "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," 18 U.S.C. §3553(a)(2)(A), and "afford adequate deterrence," *id.* §3553(a)(2)(B). As courts have recognized, "there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006), *aff'd*, 2008 U.S. App. LEXIS 24864 (2d Cir. 2008). And such a sentence would also achieve the United States Sentencing Commission's goal of ensuring "'a short but definite period of confinement'" in "'white collar' cases, both to ensure proportionate punishment and to achieve deterrence." *See* U.S. Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, 56 (Nov. 2004) (citation omitted), *available at* http://www.ussc.gov/15_year/15year.htm. There is absolutely no risk of recidivism, and thus there is no need to impose a sentence "to protect the public from further crimes of the defendant." 18 U.S.C. §3553(a)(2)(C).

## IV. CONCLUSION

For the reasons stated above, Mr. Williams respectfully submits that a sentence of one year and one day, along with supervised release, would both fulfill the purposes of 18 U.S.C. § 3553(a) and best serve the interests of justice.

Dated:   May 3, 2021                                              Respectfully submitted,

     /s/ *Terra Reynolds*
Terra Reynolds (Bar No. 6278858)
  terra.reynolds@lw.com
Sean Berkowitz (Bar No. 6209701)
  sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 N. LaSalle St., Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

*Attorneys for Defendant Dennis Williams*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those identified as non-registered participants.

<u>/s/ *Terra Reynolds*</u>
Terra Reynolds

*Attorney for Dennis Williams*